UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


C.M., by and through her next friend,
ELIZABETH MCSHANE,

          Plaintiff,

          v.

BEAVERTON SCHOOL DISTRICT 48J, by and
through the BEAVERTON SCHOOL DISTRICT
BOARD, an Oregon public school entity, JEFF
ROSE, Superintendent, in his official and individual
capacities; JOHN HUELSKAMP, Principal, in his
official and individual capacities; SHAWN
DAVITT, Vice Principal, in his official and
individual capacities; and I.F., a minor,

          Defendants.

Case No. 3:17-cv-1662-YY

OPINION AND ORDER


YOU, Magistrate Judge:

      Plaintiff has filed a motion to appoint Elizabeth McShane ("McShane") as guardian ad

litem and the real party in interest.  ECF #35.  Defendant objects on grounds that (1) C.M. is still

the only real party in interest in this lawsuit, (2) McShane's limited guardianship does not

convey the power to prosecute a civil action on C.M.'s behalf, and (3) C.M. has not been found

incompetent to prosecute this lawsuit in her own name.  Resp. 2, ECF #37.  For the reasons

discussed below, plaintiff's motion is granted but on different grounds than presented in the

written motion.

## DISCUSSION

Federal Rule of Civil Procedure 17(a)(1) provides that "[a]n action must be prosecuted in

the name of the real party in interest." However, "guardians" "may sue in their own names

without joining the person for whose benefit the action is brought[.]" FRCP 17(a)(1)(C).

Rule 17(c), which pertains specifically to minors or incompetent persons, provides that a

"general guardian" "may sue or defend on behalf of a minor or an incompetent person."

FRCP 17(c)(1)(A). Alternatively, "[a] minor or an incompetent person who does not have a duly

appointed representative may sue by a next friend or by a guardian ad litem." FRCP 17(c)(2).

"The court must appoint a guardian ad litem—or issue another appropriate order—to protect a

minor or incompetent person who is unrepresented in an action." *Id.* "To maintain a suit in a

federal court, a child or mental incompetent must be represented by a competent adult." *T.W. by

Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997).

Under FRCP 17(b), "[c]apacity to sue or be sued is determined . . . for an individual who

is not acting in a representative capacity, by the law of the individual's domicile[.]" Thus, as a

threshold matter, this court must determine whether C.M. has a duly appointed representative

who has the capacity to sue under applicable Oregon law. *See Gibbs ex rel. Gibbs v. Carnival

Cruise Lines*, 314 F.3d 125, 129 (3rd Cir. 2002) ("The first step of the Rule 17 inquiry is to look

to the law of the minor's domicile to see if the minor already has a legal representative appointed

to him."); *Estate of Escobedo v. City of Redwood City*, No. C03-03204 MJJ, 2006 WL 571354, at

*7 (N.D. Cal. Mar. 2, 2006) (holding that court "must determine if the minor has a duly

appointed representative who has the capacity to sue on behalf of the minor under applicable

state law"); *see also Gidinski v. McWilliams*, 308 F. Supp. 772 (1970) (in determining whether a

British Columbia resident had capacity to sue, pursuant to Rule 17(b), court applied Oregon law

in effect at the time, which prohibited non-residents to act as executors); *Pantano v. United*

*Medical Laboratories, Inc.*, 456 F.2d 1248, 1250 (9th Cir. 1972) (adopting analysis in *Gidinski*);

*Summers v. Interstate Tractor & Equipment Co.*, 466 F.2d 42, 49 (9th Cir. 1972) (same); *Shaw v.*

*State of California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir. 1986)

("Under Rule 17(b) . . . , the Police Department's capacity to be sued in federal court is to be

determined by the law of California.").

Under the Limited Judgment Appointing Co-Guardians, McShane has been vested with

"all of the statutory powers and duties of a guardian pursuant to ORS 125." ECF #36, at 13.

While this language may seem broad, under Oregon law, it does not include the right to sue on

C.M.'s behalf.

ORS 125.315 sets forth the powers and duties of a guardian. A guardian has "custody" of

and is responsible for the "care, comfort, and maintenance" of the protected person, including

establishing the protected person's place of abode, and being responsible for the person's

clothing, furniture and personal effects. ORS 125.315(a), (b). A guardian may consent, refuse

consent, or withhold or withdraw consent to health care. ORS 125.315(c). A guardian also

"may receive money and personal property deliverable to the protected person and apply the

money and property for support, care and education of the protected person." ORS 125.315(f).

ORS Chapter 125 is silent regarding whether a guardian has capacity to sue on behalf of

an incompetent person. Indeed, in Oregon, authority to sue on behalf of an incompetent person

lies with a conservator, who may "[p]rosecute claims of the protected person including those for

the personal injury of the protected person." ORS 125.445(27). Additionally, under Oregon

law, the court may appoint a guardian ad litem to prosecute or defend a suit on behalf of an

incapacitated person. *State ex rel. Juvenile Dep't of Multnomah Cty., v. Cooper*, 188 Or. App.

588, 598. Therefore, as a guardian, McShane lacks capacity under Oregon law to sue on behalf

of C.M.

Plaintiff argues that because McShane has been appointed as a "guardian," she is the real

party in interest under the plain language of Rule 17(c), which allows a "general guardian" to sue

on behalf of an incompetent person. Mot. 4. The term "general guardian" is not defined in Rule

17. Black's Law Dictionary defines a "general guardian" as a "[a] guardian who has general

care and control of the ward's person and estate."[1] *AT&T Mobility, LLC v. Yeager*, 143 F. Supp.

3d 1042, 1052 (E.D. Cal. 2015) (quoting Black's Law Dictionary (10th ed. 2014)). However,

Black's Law Dictionary also recognizes that a "guardian may be appointed either for all purposes

or for a specific purpose." *Id.*

McShane does not fit the description of a "general guardian." While she has been given

authority regarding the general care and control of C.M.'s person, her guardianship does not

include control over C.M.'s estate or finances. Under Oregon law, that authority is vested to

conservators.[2] Moreover, plaintiff's proposed interpretation would conflict with Rule 17(b),

---

[1] "A guardian ad litem, on the other hand, is '[a] guardian, [usually] a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party.'" *AT&T Mobility, LLC v. Yeager*, 143 F. Supp. 3d 1042, 1052 (E.D. Cal. 2015) (quoting Black's Law Dictionary (10th Ed. 2014)). "Ad litem" means "[f]or the purposes of the suit; pending the suit." *Id.*; *see also Benson v. Birch*, 139 Or. 459, 461, 10 P.2d 1050, 1051 (1932) (recognizing that "[a] guardian ad litem is a special guardian appointed by the court to prosecute or defend in behalf of an infant a suit to which such infant is a party," and the duties and powers end with the judgment).

[2] Under Oregon law, the court may appoint a conservator upon finding that a protected person is "financially incapable" and has "money or property that requires management or protection." ORS 125.400. A conservator takes possession of all property of substantial value and has certain powers over the protected person's assets and estate. ORS 125.420-445.

which requires the court to apply state law in determining whether McShane has the capacity to sue on C.M.'s behalf.

Plaintiff also argues that appointing a conservator for C.M. is impossible because she has no estate. While that may be true, the fact remains that McShane does not fit the definition of a "general guardian," which includes "general care and control of the ward's . . . estate," and as a guardian, she lacks capacity under Oregon law to sue on C.M.'s behalf.

All that being said, this court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Rule 17(c)(2).[3] A party is incompetent "if it should appear during the course of proceedings that a party may be suffering from a condition that materially affects his ability to represent himself (if pro se)" or fails to otherwise "understand the nature of the proceedings." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986). "Federal courts in this circuit have found that a broad range of evidence may inform the court's decision." *AT&T Mobility*, 143 F. Supp. 3d at 1050 (citing a report of mental disability by a government agency, a sworn declaration, representations of counsel, diagnosis of mental illness, a review of medical records, the person's age, illnesses, and general mental state, and the court's own observations of the person's behavior).

According to the Petition for Appointment of Co-Guardians filed in Washington County Circuit Court:

> [CM] was born with multiple midline birth defects: congenital heart disease (Tetralogy of Fallot), a paralyzed vocal cord, deformed lungs and a complete agenesis of the corpus callosum (ACC). [She] has had three open heart surgeries to correct her heart condition but is most impacted by her ACC diagnosis.

---

[3] On April 9, 2019, the court held a continued telephone hearing on the motion, and defendants thereafter advised the court that they had no objection to the court determining whether C.M. was incompetent based on the record that has been submitted.

Agenesis of corpus callosum (ACC) is a rare disorder that is present at birth (congenital). *It is characterized by a partial or complete absence (agenesis) of an area of the brain that connects the two cerebral hemispheres. [Her] brain has severe processing delay because of her ACC disability. This affects her cognitive abilities, including communication, evaluation, self-awareness, mathematical concepts, as well as money and time management. She needs assistance with making day-to-day decisions.* For instance, [she] is unable to decipher medical care, terminology and needs supervision over medications; she needs constant reminders about hygiene; and has limited food preparation skills. [She] requires some degree of assistance to manage the affairs of daily living.

ECF #36, at 6 (emphasis added).



This information convinces the court that C.M. is suffering from a condition that materially affects her ability to represent herself. *30.64 Acres of Land*, 795 F.2d at 805. She is incompetent for purposes of Rule 17(c)(2). No apparent conflict of interest exists if McShane is appointed as C.M.'s guardian ad litem. Therefore, McShane is appointed as C.M.'s guardian ad litem for purposes of litigating this case.

**ORDER**

Plaintiff's motion (ECF #35) is granted but on different grounds than presented in the written motion. Elizabeth McShane is appointed as guardian ad litem for C.M. for purposes of litigating this case. Defendants' motion (ECF #27), which was filed under seal, is moot.

By April 26, 2019, the parties shall submit a proposed schedule for resolving the remainder of this case, including a proposed trial date.

DATED April 11, 2019.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge